O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

|  Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers) Order on (1) Plaintiff's Motion for Summary Judgment; (2) Defendant's Motion for Summary Judgment on Plaintiff's First and Second Claims; and (3) Defendant's Motion for Summary Judgment on Plaintiff's Third, Fourth, and Fifth Claims**

Before this Court is (1) Plaintiff's Motion for Summary Judgment; (2) Defendant's Motion for Summary Judgment on Plaintiff's First and Second Claims; and (3) Defendant's Motion for Summary Judgment on Plaintiff's Third, Fourth, and Fifth Claims. The Court heard oral argument on these motions on July 28, 2008 and now issues rulings on the motions.

I.    BACKGROUND

Chevron U.S.A. Inc. ("Chevron") franchises gas stations throughout the United States, and Frydoun Sheikhpour ("Sheikhpour") is a franchisee. Sheikhpour entered into agreements with Chevron that granted Sheikhpour the rights to operate two Chevron gas stations, one in South Pasadena ("SP Station") and one in Manhattan Beach ("MB Station"). However, disputes have arisen over whether Sheikhpour has satisfactorily met his contractual duties to perform certain construction on the two gas stations. On July 10, 2007, Chevron filed its complaint giving rise to this lawsuit against Sheikhpour. Chevron brings claims for: (1) breach of contract regarding the SP Station; (2) breach of contract regarding the MB Station; (3) specific performance regarding the SP Station; (4) specific performance regarding the MB Station; and (5) declaratory relief under the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 et seq. (the "PMPA") regarding the SP Station and the MB Station.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

Presently, the parties have brought cross motions for summary judgment on all Chevron's claims.  Chevron asks the Court to find (1) that Sheikhpour has breached the parties' contracts regarding the SP and MB Stations; (2) that specific performance of Chevron's claimed repurchase rights to the stations is appropriate; and (3) that termination of the parties' franchise agreements is allowable under the PMPA.  In response, Sheikhpour asks the Court to find that (1) Chevron's claims for breach of contract fail because Chevron has not asserted any damages and (2) Chevron's claims for specific performance and for declaratory relief regarding termination of the parties' franchise agreements fail because, under the PMPA, termination of the franchise agreements is unwarranted as a matter of law.

II.     FACTS

      A.     Chevron's Relationship With Sheikhpour

According to Chevron, in 2001, the parties entered into agreements whereby Sheikhpour became the Chevron branded dealer at five stations.  (Sheikhpour's Response to Chevron's Statement of Uncontroverted Facts ("RSUF"), ¶ 1.)  Chevron claims that it entered into these agreements to sell the gas stations to Sheikhpour on condition that he remodel or construct various specifically enumerated improvements at each station.  (Id.)  The five locations included gas stations located in South Pasadena and Manhattan Beach, and Chevron had previously leased each location to independent lessees/dealers.  (Id., ¶ 2.)  Chevron claims that a change in its regional business plan in or about 2000 led to Chevron's decision to offer to sell certain of its properties to existing prospective retailers on terms that provided for each property's continued operation as a Chevron-branded service station pursuant to Dealer Agreements for a designated period.  (Id., ¶ 3.)  Chevron offered to sell to Sheikhpour, and Sheikhpour agreed to buy the MB Station and the SP Station, subject to Sheikhpour obtaining the franchise rights from the existing dealers.  (Id., ¶ 5.)  Sheikhpour committed to purchase and remodel the stations.  (Id.)

However, the parties disagree about the scope and content of their agreements.

      B.     Agreements Between the Parties

          *1.     MB Station*

Chevron claims that, for the MB Station, the parties entered into a "Chevron Branding Proposal" ("MB Branding Proposal") which outlined the basic agreements between the parties.  (Id., ¶ 6.)  The MB Branding Proposal was contained in a letter sent on May 21, 2003 to

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

Sheikhpour, and it discussed the purchase price of the station ($1,490,000), the construction Sheikhpour was to perform "pursuant to plans previously approved in writing by Chevron" that "conform[ed] to the layout attached as Exhibit B [to the MB Branding Proposal]" (which showed a layout of the improvements to be constructed), the 18-month deadline "from the close of escrow" by which the work was to be completed, and the remedy in the event Sheikhpour failed to complete the work before the specified deadline - Chevron's right to buy back the MB Station "at the original purchase price."  (Id., ¶ 6; Pearre Decl., Exh. E ("MB Branding Proposal")).

However, Sheikhpour claims that the MB Branding Proposal is not a binding contract between the parties.  Although both parties appear to have signed the MB Branding Proposal, the proposal expressly states that it "sets forth only a proposal for [Sheikhpour's] consideration. Neither [Sheikhpour] nor Chevron will be bound or have any obligations with respect to this proposal[.]"  (MB Branding Proposal, p. 89.)

After Chevron sent the MB Branding Proposal, the parties entered into a Purchase and Sale Agreement for the MB Station ("MB PSA") on June 12, 2003.  (RSUF, ¶ 8; Pearre Decl., Exh. F.)  Section 8 of the MB PSA states:

(a)    The obligations of both Buyer and Seller hereunder shall be conditioned upon Buyer entering into a new Dealer Supply Contract and related agreements ("Dealer Agreements") with Seller for a three-year term commencing as of the Closing Date for supply by Seller to Buyer of Chevron branded gasolines for resale at the Property.  All of Buyer's obligations under this Agreement shall also be deemed to be covenants of the Dealer Agreements, and any breach by Buyer of any such obligations shall also be a breach of the Dealer Agreements.  ...

(b)    Buyer shall complete construction of the improvements listed in Exhibit C hereto ("Buyer's Work") at the Property within eighteen (18) months from close of escrow (the "Completion Date").  The Completion Date shall be extended to reflect any time period during which Buyer is prevented from completing construction of Buyer's Work due to acts of God, labor disputes, strikes, inability to obtain required materials and supplies or other contingencies beyond the reasonable control of Buyer, but in no event more than two years.  Prior to the Closing Date, Buyer shall provide Seller with Buyer's plans and specifications for Buyer's Work ("Plans").  The obligations of both Seller and Buyer hereunder shall be contingent upon the approval by Seller of such Plans, which approval Seller

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

          may in its sole discretion arbitrarily withhold.

    ...

    (d)     If Buyer has not completed Buyer's Work in accordance with the Plans on or before the Completion Date, Seller shall have the option, at any time within one year of the Completion Date, to repurchase the Property, together with all buildings, improvements and personal property (other than resale inventory) then located on the Property, all privileges and other rights now or hereafter made appurtenant thereto, at the same price paid by Buyer for the Property under this Agreement and on the terms and conditions more particularly set forth in the Deed.

(MB PSA, p. 100-01.)  Furthermore, the MB PSA's Section 15 states:

    ... This agreement, including the exhibits or other writings referred to herein, constitutes the entire agreement between Seller and Buyer with regard to the subject matter hereof, and supersedes all prior oral or written agreements, commitments or understandings with respect thereto.  No amendment hereof, or any waiver of any provision hereof, shall be binding on the parties unless in writing and signed by authorized representatives of both parties thereto.  Time is of the essence hereof.  ...

(MB PSA, p. 103.)

    Despite the provision in Section 15 of the MB PSA that provides that no waiver or amendment of the MB PSA shall be binding unless in writing and signed by both parties, Sheikhpour argues that Chevron waived its repurchase rights under the MB PSA.  Sheikhpour claims that the "sales of the SP and MB station were conditioned upon Buyer, Sheikhpour, providing Seller, Chevron 'Prior to the Closing Date ... with Buyer's plans and specifications for Buyer's Work ('Plans').' ... Chevron's claimed repurchase rights were conditioned upon failure of Sheikhpour to complete remodeling 'in accordance with the Plans' ... Thus, Chevron and Sheikhpour entered into an agreement to remodel in accordance with Plans and Chevron waived the requirement of Plans [by closing escrow without requiring Sheikhpour to submit Plans]." (RSUF, ¶ 1.)

    Based on the parties' MB PSA, on November 21, 2003, Chevron and Sheikhpour executed a Grant Deed ("MB Grant Deed") under which Chevron granted Sheikhpour the real property on which the MB Station is located.  (Id., ¶ 11.)  However, by its express terms, the MB

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|----------|------------------------|------|--------------|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

Grant Deed was "subject to ... the Deed Reservation containing Grantor's option to repurchase the Property if certain improvements to the Property are not made by Grantee." (Pearre Decl., Exh. H ("MB Grant Deed"), p. 146.)  Specifically, the Deed Reservation found at Section C of the MB Grant Deed states:

> Pursuant to the Purchase and Sale Agreement, Grantee has promised to complete construction of certain improvements at the Property ("Grantee's Work") within eighteen (18) months from the close of escrow (the "Completion Date") in accordance with plans and specifications approved by Grantor (the "Plans").  The Completion Date shall be extended to reflect any time period during which Grantee is prevented from completing construction of Grantee's Work due to acts of God, labor disputes, strikes, inability to obtain required materials and supplies or other contingencies beyond the reasonable control of Grantee, but in no event more than two years.  If Grantee has not completed Grantee's Work in accordance with the Plans on or before the Completion Date, Grantor hereby reserves to itself, its successors and assigns, and Grantee hereby grants to Grantor, its successors and assigns, the option to repurchase the Property from Grantee or any Subsequent Owner at the price paid by Grantee for the Property under the Purchase and Sale Agreement ...

(MB Grant Deed, p. 149.)

Sheikhpour contends that the Deed Reservation regarding Chevron's repurchase rights is unenforceable.  Sheikhpour claims that Chevron is estopped from seeking to enforce the repurchase provision because Chevron failed to disclose material facts concerning the property and the remodeling required and because Chevron took actions during the remodeling process that prevented Sheikhpour from performing the required improvements.  (RSUF, ¶ 11.)

On November 13, 2003, the parties entered into a new Dealer Supply Agreement ("MB Dealer Agreement") for the MB Station.  (Id., ¶ 12.)  Section 7(b) of the MB Dealer Agreement states:

> Chevron may, ... subject to any valid requirements of any applicable statute, terminate this Contract upon giving Dealer ninety (90) days' prior written notice of such termination or, if it would not be reasonable for Chevron to give ninety (90) days' prior written notice, at Chevron's election upon giving Dealer prior written notice for such lesser period as is reasonable in the circumstances, if any one of the following occurs: ...

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

(13) Any other event which is relevant to the relationship between Chevron and
Dealer and as a result of which termination of this Contract is reasonable.

(MB Dealer Agreement, p. 133.)  Pursuant to this provision, Chevron claims that it is entitled to
terminate the MB Dealer Agreement because Sheikhpour failed his obligations under the MB
PSA and the MB Grant Deed to make required improvements.  (RSUF, ¶ 12.)

  2.    *SP Station*

     As with the MB Station, Chevron sent Sheikhpour a Branding Proposal for the SP Station
("SP Branding Proposal") by letter on September 13, 2002.  (Pearre Decl., Exh. A ("SP
Branding Proposal")).  The SP Branding Proposal discussed the same relevant terms as the MB
Branding Proposal.

     The parties also entered into agreements for the SP Station.  On October 15, 2002, the
parties entered into a Purchase and Sale Agreement for the SP Station ("SP PSA") that contains
some of the same relevant provisions as the MB PSA, but with some important differences.  In
particular, Section 8 of the SP PSA states:

  (b)    Buyer shall complete construction of the improvements listed in Exhibit C hereto
      ('Buyer's Work') at the Property on or before June 30, 2004 (the 'Completion
      Date').  The Completion Date shall be extended to reflect any time period during
      which Buyer is prevented from completing construction of Buyer's Work due to
      acts of God, labor disputes, strikes, inability to obtain required materials and
      supplies or other contingencies beyond the reasonable control of Buyer.  Prior to
      the Closing Date, Buyer shall provide Seller with Buyer's plans and specifications
      for Buyer's Work ("Plans").  The obligations of both Seller and Buyer hereunder
      shall be contingent upon the approval by Seller of such Plans, which approval
      Seller may in its sole discretion arbitrarily withhold.

(Pearre Decl., Exh. B ("SP PSA"), p. 21.)  The SP PSA also contains an integration clause
similar to the integration clause contained in the MB PSA, and Section 17 of the SP PSA states:

  ... This agreement, including the exhibits or other writings referred to herein, constitutes
  the entire agreement between Seller and Buyer with regard to the subject matter hereof,
  and supersedes all prior oral or written agreements, commitments or understandings with
  respect thereto.  Time is of the essence hereof.  No amendment hereof, and no waiver of

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

any provision hereof, shall be binding on the parties unless in writing and signed by authorized representatives of both parties hereto.  Waiver by either party of any breach, default, covenant or condition hereof shall not be deemed to be a waiver of any other or continuing breach or default hereunder or any other covenant or condition hereunder.  ...

(SP PSA, p. 25.)

Also, the parties executed a grant deed for the SP Station property ("SP Grant Deed") on January 22, 2003 under terms that parallel the terms of the MB Grant Deed.  (Pearre Decl., Exh. D ("SP Grant Deed"), p. 82.)  Specifically, the reservation found in Section C of the SP Grant Deed states:

1.    Grantee shall complete construction of the following improvements ("Grantee's Work") at the Property on or before June 30, 2004 (the "Completion Date"):

   •    Replace existing automotive service bay with New CS 2010 Convenience Store and expand existing Canopy to current HM 21 standards.
   •    Install Hallmark 21 Landscaping.

        The Completion Date shall be extended to reflect any time period during which Grantee is prevented from completing construction of Grantee's Work due to acts of God, labor disputes, strikes [sic] inability to obtain required materials and supplies or other contingencies beyond the reasonable control of Grantee.  Prior to the Closing Date, Grantee shall provide Grantor with Grantee's plans and specifications for Grantee's work ("Plans").  The obligations of both Grantor and Grantee hereunder shall be contingent upon the approval by Grantor of such Plans, which approval Grantor may in its sole discretion arbitrarily withhold.

2.    If Grantee has not completed Grantee's Work in accordance with the plans on or before the Completion date, Grantor shall have the right to repurchase the Property, together with all buildings, improvements and personal property (other than resale inventory) then located on the Property, all privileges and other rights now or hereafter made appurtenant thereto, at the price paid by Grantee for the Property under this Agreement ...

(SP Grant Deed, p. 81.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

Finally, the parties entered into a Dealer Agreement for the SP Station ("SP Dealer Agreement") that is dated January 4, 2003. (Pearre Decl., Exh. C. ("SP Dealer Agreement"), p. 43.) The SP Dealer Agreement contains a relevant provision regarding termination of the agreement that is identical to the relevant provision found in the MB Dealer Agreement. Section 7(b) of the SP Dealer Agreement states:

> Chevron may, ... subject to any valid requirements of any applicable statute, terminate this Contract upon giving Dealer ninety (90) days' prior written notice of such termination or, if it would not be reasonable for Chevron to give ninety (90) days' prior written notice, at Chevron's election upon giving Dealer prior written notice for such lesser period as is reasonable in the circumstances, if any one of the following occurs: ...

> (13) Any other event which is relevant to the relationship between Chevron and Dealer and as a result of which termination of this Contract is reasonable.

(SP Dealer Agreement, p. 47.)

C.      The Parties' Performances of the Contracts

1.      *MB Station Contracts*

Under the MB PSA, Sheikhpour was obligated to complete required improvements by June 11, 2005, eighteen months following the close of escrow. (MB PSA, p. 100; RSUF, ¶ 20.) After this Completion Date passed, Chevron agreed to extend the deadline to June 11, 2006. (RSUF, ¶ 20.) Chevron contends that Sheikhpour had not even begun construction at the MB Station by the extended Completion Date. (Id., ¶ 21.) On August 26, 2006, Chevron informed Sheikhpour that due to his inability to start construction by the extended June 11, 2006 Completion Date, Chevron was exercising its claimed right to repurchase the property. (RSUF, ¶ 22.)

Sheikhpour vigorously disputes Chevron's characterization of the parties' performance under the MB Station contracts. Sheikhpour contends that construction includes the planning and permitting phases of a remodel project. (RSUF, ¶ 21.) He claims that he commenced the design and permitting processes and encountered numerous obstacles beyond his reasonable control, including the fact that the property was not zoned to allow the construction. (Id.) Sheikhpour also contends that he was told by Chevron that it understood Sheikhpour could not

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|----------|----------------------|------|--------------|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

start construction until the city's General Plan and zoning changes had occurred and that Sheikhpour would be provided extra time. (Id.)

Sheikhpour further contends that Chevron waived its repurchase right under the MB PSA by not requiring him to submit Plans for the construction before close of escrow. (Id.) Sheikhpour claims that, prior to the close of escrow, Chevron instructed Sheikhpour not to submit plans or begin remodeling because the property was not zoned for a service station and, although Manhattan Beach was in the process of changing the property zoning, it had not yet completed rezoning. (Id., ¶ 22.) Also, Sheikhpour contends that the escrow instructions for the MB Station provided that upon close of escrow all conditions that had not occurred were deemed waived. (Id.) Furthermore, after close of escrow, Sheikhour contends that he submitted plans which were neither approved nor disapproved by Chevron. (Id.) Finally, Sheikhpour claims that no new date was ever agreed upon relative to the submission of plans as defined in the MB PSA. (Id., ¶ 23.)

However, Chevron contends that Sheikhpour never managed to submit to Chevron final drawings meeting Chevron's approval regarding the MB Station layout. (RSUF, ¶ 23.) Additionally, Chevron contends that Sheikhpour's current architectural and contractor firm, hired in August 2007, pronounced all previous plans and drawings deficient and inadequate and started from "scratch," with the preparation of a new Permit Application to the city in January 2008. (Id., ¶ 24; Roberts Decl., Exh. J ("Ghaderi Dep."), 23:16-24:4.) Chevron claims that Sheikhpour is well beyond the original and extended Completion Dates for the MB Station construction and also beyond the 2-year maximum extension on the Completion Date provided in the MB PSA. (RSUF, ¶ 25.) Finally, Chevron contends that five years have elapsed since the MB Station franchise agreements were executed, and none of the required construction has been completed. (Id., ¶ 26.)

> 2.    *SP Station Contracts*

Under the SP PSA, Sheikhpour was required to "[r]eplace [an] existing automotive service bay with [a] New CS 2010 Convenience Store and expand existing Canopy to current HM 21 standards." (SP PSA, Exh. C, p. 42.) The original Completion Date was June 30, 2004. (SP PSA, p. 21.) On November 15, 2005, Chevron granted Sheikhpour an extension of the Completion Date to June 30, 2006 to complete the required work. (RSUF, ¶ 28.)

In August 2006, Chevron claims that construction had not yet begun at the SP Station, and Chevron notified Sheikhpour that it was exercising its claimed right to repurchase the SP

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|----------|------------------------|------|--------------|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

Station property and terminate the dealer relationship. (RSUF, ¶ 29.) Chevron's stated grounds were the same as its grounds for repurchase of the MB Station and termination of the MB Dealer Agreement, namely Sheikhpour's alleged failure to complete required construction. (Id.) After Chevron notified Sheikhpour of its desired repurchase, Chevron also notified Sheikhpour that he should cease efforts to obtain permits for construction projects at variance from Chevron's required construction. (RSUF, ¶ 31.) As with the MB Station, Sheikhpour continues to attempt to obtain permits for construction projects that have not been approved by Chevron. (Id., ¶ 32.)

Sheikhpour again vigorously contests Chevron's characterization of their interactions over the SP Station. As with the MB Station, Sheikhpour claims that Chevron did not require him to submit plans for the construction before close of escrow, and therefore, Sheikhpour argues that Chevron has waived its repurchase rights under the SP PSA. (RSUF, ¶ 28.) Furthermore, as with the MB PSA, the SP PSA explicitly states that Chevron will provide Sheikhpour with extensions of time to complete the required construction if contingencies beyond Sheikhpour's reasonable control should arise. (Id.; SP PSA, p. 21.) However, unlike the MB PSA, the SP PSA does not explicitly provide a maximum extension period on the Completion Date for these contingencies. (Id.)

Also, Sheikhpour claims that the city's zoning process has prevented him from completing the required construction, and the city's actions are a contingency beyond his reasonable control. (RSUF, ¶ 32.) Thus, Sheikhpour claims that Chevron is required to extend the Completion Date to allow for this contingency. (RSUF, ¶ 29.) Sheikhpour further claims that he has been advised by the City of South Pasadena that a substantial portion of the SP Station property is zoned "residential" and that the City will not support a rezoning to allow Chevron's desired commercial construction. (Id., ¶ 32.) Yet, Sheikhpour continues to process an application for a construction project at the SP Station. (Id.)

D.    Alleged Circumstances Beyond Sheikhpour's Reasonable Control Affecting the Construction at the SP and MB Stations

1.    *SP Station Difficulties*

In support of Sheikhpour's claim that Chevron has acted unreasonably in refusing to grant further extensions to complete construction, Sheikhpour states that Chevron's previous experiences with construction at the MB Station and the SP Station should have given Chevron notice of the difficulty of obtaining permits for construction. Sheikhpour claims that commencing in 1998 and continuing through 1999, Chevron undertook to develop the SP Station

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

by removal of the existing building and installation of a new convenience store.  (RSUF, ¶ 39.)
After being involved in this process for approximately 11 months, Chevron abandoned the
project "due to negative DRB (Design Review Board)."  (Id.)  The unsuccessful site plan used
by Chevron in 1998 is the same as the site plan attached to the SP Branding Proposal.  (Id.)

Sheikhpour also claims that Chevron's prior 1998 effort to remodel the SP Station was
not disclosed to Sheikhpour before his purchase of the SP Station.  (RSUF, ¶ 40.)  Sheikhpour
claims that John Pearre ("Pearre"), the Chevron executive who prepared the SP Branding
Proposal and the SP PSA, was not aware when he prepared those documents that Chevron had
attempted to remodel the SP Station previously and had abandoned the project.  (Id., ¶ 41.)
Instead, ("Pearre") assumed that the remodeling required by Chevron for the SP Station would
be permitted under the existing zoning for the SP property.  (Id.)

Furthermore, Sheikhpour claims that the SP Station construction was also delayed by bad
contractors recommended by Chevron.  Sheikhpour states that a Chevron representative
recommended a contractor, RJS Construction ("RJS").  (Id., ¶ 42.)  Based on Chevron's
recommendation, Sheikhpour retained RJS on October 3, 2003 to perform remodeling and paid
RJS $20,000.  (Id.)  However, RJS filed for bankruptcy on August 17, 2004 and provided no
services.  (Id.)

After RJS filed for bankruptcy, Sheikhpour retained the services of a new firm, Octagon,
to design, prepare plans and secure required permits to remodel the SP Station.  (Id., ¶ 44.)  The
first set of plans was prepared in May 2004.  (Id.)  Sheikhour claims that designs and plans for
the SP Station were submitted to Chevron who approved the site plans and elevations.  (Id., ¶
46.)

When the plans were submitted to the City of South Pasadena Design Review Board, the
plans were rejected in a manner that Octagon believed was completely unreasonable.  (RSUF, ¶
50.)  Members of the Design Review Board requested wood treatment on canopies above pumps
and on the pumps, which would have been a violation of fire codes because of the combustible
nature of the material.  (Id.)  Residential neighbors also appeared at Design Review Board
meetings to oppose the SP Station work.  (Id., ¶ 51.)  Eventually, Octagon withdrew from further
work on both the SP and MB Stations.  (Id.)

Sheikhpour eventually retained the services of a member of the South Pasadena Design
Review Board to design the improvements to the SP Station.  (Id., ¶¶ 56-57.)  Ultimately,
Sheikhpour was able to obtain the approval of the SP Design Review Board of a plan for

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

remodeling the SP station to include a convenience market. (Id., ¶ 57.)  However, Sheikhpour
failed to obtain a Conditional Use Permit following the Design Review Board's approval
because the City determined that a portion of the SP Station property had been rezoned
"residential." (Id., ¶ 58.)

         2.     *MB Station Difficulties*

       On May 1, 2000, Chevron retained an architect to investigate the potential for remodeling
the MB Station and was advised that (1) the MB Station was zoned "IP"; (2) service station uses
are not permitted in the IP zone; and (3) to permit remodeling, an amendment to the City's
General Plan would be necessary and a subsequent rezone application would need to be
approved. (RSUF, ¶ 62.)  The City's General Plan was amended in December 2003, and a new
zoning map was not adopted until August, 2004. (Id., ¶ 63.)  However, even under the new
zoning map, a Conditional Use Permit was required before any remodeling could occur. (Id., ¶
64.)

       Sheikhpour's first architect, Octagon, prepared its first set of drawings in October 2004,
after the new zoning map was available. (Id., ¶ 65.)  Sheikhpour caused the plans to be prepared
even though the City was not prepared to accept the plans. (Id.)  The plans were revised at least
twice in February 2005 and June 2005 to address comments from the City. (Id.)  However,
Octagon withdrew from working with Sheikhpour because of difficulties with the SP Station.
(Id., ¶ 66.)

       Sheikhpour retained two new architects, one of whom prepared work that Chevron
deemed unacceptable because his drawings were hand-drawn. (RSUF, ¶¶ 67-68.)  Sheikhpour's
second new architect, Bazeghi, prepared plans that were submitted to Chevron. (Id., ¶ 69.)
Chevron made only "minor" comments, that Bazeghi found could be addressed in final versions
of the plans. (Id.)  Bazeghi's plans were submitted to the City, and numerous issues arose. (Id.,
¶ 70.)  Then, Bazeghi submitted his plans to Chevron again and received "terminal approval"
from Chevron. (Id., ¶ 71.)

       After Chevron filed the current lawsuit, Sheikhpour retained another firm, A&S
Engineering to complete the MB Station work. (Id., ¶ 72.)  Sheikhpour has continued to pursue
the permitting process for his plans, and he believes permits will soon be secured. (Id., ¶ 73.)

       Despite the occurrences of events impacting the remodeling of the SP and MB Stations,
Sheikhpour contends that he has reasonably and diligently pursued the remodeling of the SP and

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

MB Stations from the time of his purchase of the stations to the present.  (RSUF, ¶ 61.)

III.   LEGAL STANDARD

    A.   Summary Judgment Standard

    Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial.  *See id.* at 257.

    A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  *See Anderson*, 477 U.S. at 250-51.

    If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence.  Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue.  *See* Fed. R. Civ. P. 56(e).

    B.   Interpretation of Contracts Under California Law

    "Issues of contract interpretation are questions of law for the trial court ..."  *De Guere v. Universal City Studios, Inc.*, 56 Cal. App. 4th 482, 501, 65 Cal. Rptr. 2d 438 (1997); *Parsons v. Bristol Development Co.*, 62 Cal. 2d 861, 865, 44 Cal. Rptr. 767 (1965) ("The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

given effect. [Citations.] It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.")

Also, "[t]he fundamental canon of interpreting written instruments is the ascertainment of the intent of the parties. [Citations.] As a rule, the language of an instrument must govern its interpretation if the language is clear and explicit." *Brookwood v. Bank of America*, 45 Cal. App. 4th 1667, 1670-71, 53 Cal. Rptr. 2d 515 (1996) (citation omitted).

California courts are further bound by California's statutory rules regarding the interpretation of contracts, Cal. Civ. Code §§ 1635-1663. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of the contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. Also, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. Furthermore, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this Title." Cal. Civ. Code § 1639. Finally, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

## IV.  DISCUSSION

As an initial matter, the parties do not dispute that California contract law governs the parties' disputed contracts. Thus, the Court applies California contract law regarding the interpretation of contracts.

Presently, the parties have brought cross motions for summary judgment on all Chevron's claims. Chevron filed its motion for summary judgment asking the Court to find that (1) Chevron is entitled to summary judgment on its first claim for breach of contract because Sheikhpour breached his obligation to remodel the SP Station within the agreed upon time; (2) Chevron is entitled to summary judgment on its second claim for breach of contract because Sheikhpour breached his obligation to remodel the MB Station within the agreed upon time; (3) Chevron is entitled to summary judgment on its third claim for specific performance because Sheikhpour's breach of his obligation to remodel the SP Station within the agreed time entitles Chevron to specific performance of Chevron's "Repurchase Option" and to termination of the Supply Agreement; (4) Chevron is entitled to summary judgment on its fourth claim for specific performance because Sheikhpour's breach of his obligation to remodel the MB Station within the agreed time entitles Chevron to specific performance of Chevron's "Repurchase Option" and

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

to termination of the Supply Agreement; and (5) Chevron is entitled to summary judgment on its fifth claim for declaratory relief under the PMPA because, as a matter of law, Chevron properly terminated Sheikhpour's franchise dealer relationship at the SP Station and at the MB Station.

In response to Chevron's summary judgment motion, Sheikhpour has filed two separate summary judgment motions. In Sheikhpour's first motion, Sheikhpour asks the Court to find that Chevron's first two causes of action for breach of contract fail as a matter of law because (1) Chevron will not introduce evidence of damages and there is a failure of proof on the damage element for a claim of breach of contract and (2) the breach of contract claims are moot because Chevron does not seek damages. In Sheikhpour's second motion, Sheikhpour asks the Court to find that Chevron's third through fifth claims for specific performance and for declaratory relief fail because the parties' "Dealer Supply Contracts" and "Purchase and Sale Agreements" are, by definition under the PMPA, franchise agreements and there has been no material breach of a provision of the agreements that is material to the franchise relationship.

The Court first addresses Sheikhpour's argument regarding the adequacy of Chevron's claims for breach of contract, given Chevron's decision to seek specific performance rather than contract damages. Next, the Court will address the merits of Chevron's claims for breach of contract. Then, the Court will address the effect of the PMPA on Chevron's claims for specific performance and for declaratory relief regarding termination of the franchise agreements.

A.     Breach of Contract Claims

1.     *Did Chevron Bring a Viable Claim for Breach of Contract?*

Sheikhpour argues that Chevron's claims for breach of contract on the SP Station contracts and the MB Station contracts fail as a matter of law because Chevron has not sought contract damages and instead only seeks specific performance of its claimed contractual repurchase rights. Sheikhpour argues that case law establishes that Chevron must prove several elements of a breach of contract claim including: (1) the existence of a contract, (2) Chevron's performance under the contract or excuse for nonperformance, (3) Sheikhpour's breach, and (4) damages. *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745, 108 Cal. Rptr. 2d 23 (2001) (citing *4 Witkin, Cal. Procedure* (4th ed. 1997) Pleading, § 476, p. 570). According to Sheikhpour, because Chevron does not seek contract damages, Chevron's claim fails.

However, Sheikhpour's overly simplistic argument is misguided. Chevron merely argues

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

in its summary judgment motion that it is entitled to a finding that Sheikhpour has breached the parties' contracts. Thus, Chevron's summary judgement motion does not require it to prove contract damages, and the question of whether Chevron can prove contract damages need not be addressed with Chevron's motion. Sheikhpour, however, argues that Chevron's desire for a remedy of specific performance instead of contractual damages means that Chevron's contract claims fail for failure to prove the element of damages in a contract claim. Sheikhpour is wrong. Chevron has submitted some evidence that it has in fact suffered damage due to Sheikhpour's alleged breach of contract. These damages include lost profits and loss of goodwill through damage to Chevron's marketing image. Chevron has thus submitted sufficient evidence of damages to allow its breach of contract claims to stand, and Chevron is entitled to seek any remedy that it can legally obtain for Sheikhpour's alleged contractual breaches. Because lost profit damages and damages to goodwill are difficult to quantify, Chevron states that it has elected to pursue specific performance as a remedy as explicitly provided under the contracts' terms. This is allowable, and California courts have also reached the conclusion that, for cases involving real property, specific performance for breach of contract is available whether or not a plaintiff can prove damages with certainty. *See Remmers v. Ciciliot*, 59 Cal. App. 2d 113, 119, 138 P.2d 306 (1943).

Thus, the Court DENIES Sheikhpour's Motion for Summary Judgment on Chevron's First and Second Claims for Breach of Contract.

> 2.   *Is Chevron Entitled to Summary Judgment on Its Claims for Breach of Contract?*

> a.   MB Station Contracts

Chevron argues that the Court should summarily find that Sheikhpour has breached the parties' agreements regarding the MB Station. Specifically, Chevron claims that Sheikhpour breached his obligation to construct improvements specified in the MB PSA by the extended Completion Date. The MB PSA required Sheikhpour to "complete construction of the improvements" "within eighteen (18) months from the close of escrow (the 'Completion Date')." (MB PSA, p. 100.) Under the MB PSA, Sheikhpour was initially obligated to complete the improvements by June 11, 2005, 18 months after the close of escrow. (Id.; RSUF, ¶ 20.) However, after this initial Completion Date passed, Chevron extended the Completion Date to June 11, 2006. (RSUF, ¶ 20.)

Here, Sheikhpour does not dispute that he did not complete the required improvements by

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

June 11, 2006.  In fact, Sheikhpour admits that he has not completed the required improvements as of the filing date for his opposition to Chevron's summary judgment motion, on July 18, 2008.  Thus, without some excuse for his failure to perform, Sheikhpour is in violation of his obligation to complete the improvements by the extended Completion Date.

The MB Grant Deed also contains a provision that Sheikhpour appears to have violated. As with the MB PSA, the MB Grant Deed required Sheikhpour to "complete construction of certain improvements ... within eighteen (18) months from the close of escrow (the 'Completion Date') in accordance with plans and specifications approved by [Chevron]."  (MB Grant Deed, p. 149.)  Thus, the MB Grant Deed placed the same deadline on Sheikhpour as the MB PSA, and because Sheikhpour missed the deadline under the MB PSA, he also missed the deadline under the MB Grant Deed.

However, despite Sheikhpour's apparent violation of contractual terms of the MB PSA and the MB Grant Deed, Sheikhpour argues that he is excused from missing the extended Completion Date for the MB Station improvements.  First, Sheikhpour argues that contingencies beyond his reasonable control arose to prevent him from completing the improvements, and under the express terms of the MB PSA and the MB Grant Deed, Chevron was required to grant him extensions on the Completion Date.  Second, Sheikhpour argues that the MB PSA expressly required him to submit to Chevron plans for the improvement projects before close of escrow, a task that he did not complete.  Sheikhpour claims that performance of this condition was required before Sheikhpour's obligation to meet the Completion Date could arise and before Chevron's repurchase right could arise.  Thus, Sheikhpour argues that Chevron's waiver of the requirement that he submit plans before close of escrow amounts to a waiver of Chevron's claimed repurchase right upon Sheikhpour's failure to meet the Completion Date.  Third, Sheikhpour argues that, during and after the MB Station property sale, Chevron withheld material information from Sheikhpour, that Chevron's employees caused him to use a contractor resulting in Sheikhpour's monetary losses, and that Chevron created numerous issues that delayed Sheikhpour's construction.  Thus, Sheikhpour argues that Chevron prevented and hindered his performance under the parties' agreements, and this excuses his failure to meet the extended Completion Date under Cal. Civ. Code § 1511(1).  The Court now addresses Sheikhpour's arguments to excuse his failure to meet the extended Completion Date.

    i.  Is Sheikhpour Excused Because Chevron Was Required to Grant Further Extensions on the Completion Date?

Sheikhpour's first argument to excuse his failure to meet the extended Completion Date -

**O**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

that Chevron was obligated to provide further extensions of the Completion Date - fails. The MB PSA provides that "[t]he Completion Date shall be extended to reflect any time period during which Buyer is prevented from completing construction of Buyer's Work due to acts of God, labor disputes, strikes, inability to obtain required materials and supplies or other contingencies beyond the reasonable control of Buyer, *but in no event more than two years*." (MB PSA, p. 100. (emphasis added)). Here, it is undisputed that Sheikhpour has not completed the improvements as of July 18, 2008. Even if Chevron was obligated to grant the contractual maximum two year extension on the Completion Date, the extended Completion Date would have been June 11, 2007. Thus, by Sheikhpour's admissions, he has missed the Completion Date even under its maximum contractual extension term.

        ii.    Did Chevron Waive the Requirement for Sheikhpour to Meet the Completion Date and Waive Chevron's Repurchase Right?

Additionally, Sheikhpour argues that Chevron waived the requirement for Sheikhpour to meet the Completion Deadline and also waived Chevron's repurchase right under the MB PSA. Section 8(b) of the MB PSA states:

    (b)    Buyer shall complete construction of the improvements listed in Exhibit C hereto ("Buyer's Work") at the Property within eighteen (18) months from close of escrow (the "Completion Date"). The Completion Date shall be extended to reflect any time period during which Buyer is prevented from completing construction of Buyer's Work due to acts of God, labor disputes, strikes, inability to obtain required materials and supplies or other contingencies beyond the reasonable control of Buyer, but in no event more than two years. Prior to the Closing Date, Buyer shall provide Seller with Buyer's plans and specifications for Buyer's Work ("Plans"). The obligations of both Seller and Buyer hereunder shall be contingent upon the approval by Seller of such Plans, which approval Seller may in its sole discretion arbitrarily withhold.

(MB PSA, p. 100.) Sheikhpour emphasizes that this contractual provision required that "[p]rior to the Closing Date, [Sheikhpour] shall provide [Chevron] with [Sheikhpour's] plans and specifications for [Sheikhpour's] Work ('Plans'). The obligations of both [Chevron] and [Sheikhpour] hereunder shall be contingent upon the approval by [Chevron] of such Plans ....." Sheikhpour argues that he never submitted Plans to Chevron prior to the Closing Date and that all his obligations under the MB PSA were expressly contingent upon the approval by Chevron

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|----------|------------------------|------|--------------|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

of these Plans.  Sheikhpour also notes that Section 8(d) of the MB PSA also states:

> If [Sheikhpour] has not completed [Sheikhpour's] Work in accordance with the Plans on or before the Completion Date, [Chevron] shall have the option, at any time within one year of the Completion Date, to repurchase the Property ...

(MB PSA, p. 101.)  Based on this provision of the MB PSA, Sheikhpour argues that Chevron's repurchase right is contingent on Sheikhpour's failure to complete his work *in accordance with the Plans*, and because Chevron did not require Plans to be created prior to close of escrow, Chevron's repurchase right cannot arise.

However, the Court finds Sheikhpour's waiver arguments unconvincing for several reasons.  First, Sheikhpour has cited no case law supporting his waiver claims.  Second, the MB PSA's Section 15 expressly discusses waivers and states that "[n]o amendment hereof, or any waiver of any provision hereof, shall be binding on the parties unless in writing and signed by authorized representatives of both parties thereto."  (MB PSA, p. 103.)  Thus, under this provision, Chevron's alleged waiver of the requirement that Sheikhpour submit Plans before close of escrow does not affect the parties' other obligations under the MB PSA.  Third, even with Sheikhpour's failure to provide Plans for the construction before the close of escrow, his obligations to complete construction before the Completion Date are sufficiently definite to be enforceable under the MB PSA.  The MB PSA required that Sheikhpour "complete construction of the improvements listed in Exhibit C" before the Completion Date.  Even without Plans for the construction, the MB PSA definitely required Sheikhpour to complete construction of a "New HM-21 Starting Gate Canopy, Hallmark 21 Landscaping, [a] New CS 2818 Grand Entrance Convenience, 4 Dresser Wayne/Gilbarco Multi-Product Dispensers with Dispenser Cardreaders, [a] Car Wash" and other projects.  (MB PSA, p. 118.)  Fourth, the MB PSA provided that Chevron had very wide discretion with regard to the Plans, and the MB PSA stated that "[t]he obligations of both [Chevron] and [Sheikhpour] hereunder shall be contingent upon the approval by [Chevron] of such Plans, which approval [Chevron] may in its sole discretion arbitrarily withhold."  (MB PSA, p. 101.)  Thus, because the MB PSA provided that Chevron could arbitrarily withhold approval of any Plans that Sheikhpour might submit, this discretion should be interpreted to include discretion to not require submission of any Plans at all.

       iii.    Was Sheikhpour's Failure to Meet the Completion Date Excused by Chevron's Hindrances?

Next, Sheikhpour argues that his failure to meet the extended Completion Date for the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

MB Station is excused under Cal. Civ. Code § 1511(1) because Chevron hindered his efforts to complete the required improvements.  That statute states:

> The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate:

> (1)   When such performance or offer is prevented or delayed by the act of the creditor, or by the operation of law, even though there may have been a stipulation that this shall not be an excuse ...

Cal. Civ. Code § 1511(1).  Here, Sheikhpour has submitted some evidence suggesting that Chevron may have hindered his performance of the contract.  Sheikhpour submitted a declaration suggesting that after his first architect, Octagon, ended their relationship, Sheikhpour hired another firm called TAG Engineering.  (Sheikhpour Decl. in Support of Opp. to Chevron's MSJ ("Sheikhpour Opp. Decl."), ¶ 85.)  Sheikhpour's declaration also states that "on or about the November/December 2005 time period, Mr. Geiringer of TAG and I attended a meeting at Chevron's headquarters."  (Sheikhpour Opp. Decl., ¶ 88.)  Sheikhpour's declaration further states:

> [a]t that time, in my presence, TAG's plans for the SP Station as well as the MB station were provided to Chevron's representatives (Ms. Humphreys, Mr. Johns and Ms. Molinar).  During the meeting, a discussion took place about the TAG building design and status of the Manhattan Beach zoning changes.  ... At the time the meeting was concluded, Chevron's representatives did not approve or disapprove TAG's plans. Instead, Chevron's representative, Mr. Johns stated comments would be provided.  Mr. Geiringer told Chevron's representatives that if they had any questions or wanted information or modifications to the plans he was willing to come back to Chevron's offices to meet and resolve any issues.  Mr. Johns said that if he needed anything he would contact Mr. Geiringer.  Thereafter, Chevron did not request any information, provide any comments or approve or disapprove TAG's plans. ...
> [W]eeks thereafter, during a conversation with Ms. Humphreys, she told me that Mr. Johns did not like TAG, that Chevron did not like to work with companies like TAG and that she doubted any plans prepared by TAG would receive Chevron's approval.  She suggested that I use a different company to prepare plans.  Also as noted, in further communications with her, Ms. Humphreys would not provide me the name of an architect or engineer Chevron found acceptable.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

(Sheikhpour Opp. Decl., ¶¶ 88-89.)[1]  Because of Chevron's alleged unwillingness to work with TAG, Sheikhpour claims that he then found a new architect, Abbas Bazeghi, during Spring 2006.  (Id., ¶ 90.)  This is Sheikhpour's only evidence of hindrance at the MB Station.

Based on Sheikhpour's declaration, there is sufficient evidence to suggest that Chevron hindered Sheikhpour's performance of his obligation to complete improvements at the MB Station by the extended Completion Date, but this hindrance, at most, might have caused Sheikhpour a delay of one year.  In his declaration, Sheikhpour admits that his architect, Octagon, withdrew from representing him on June 15, 2005.  (Sheikhpour Opp. Decl., ¶¶ 36 & 40; RUSF, ¶ 51.)  At some point after Octagon's withdrawal, Sheikhpour then hired TAG.  (¶ 85.)  Because of Chevron's alleged unwillingness to work with TAG, "[d]uring Spring 2006," Sheikhpour then hired a new architect.  Thus, assuming that Sheikhpour worked with TAG from June 15, 2005 to June 15, 2006, the maximum amount of time that Sheikhpour might have employed TAG, Chevron's hindrance amounted to a one year delay at most.

Taking into account Chevron's alleged hindrance does not excuse Sheikhpour's failure to meet the extended Completion Date.  The original Completion Date was June 11, 2005, (RUSF, ¶ 20), and the extended Completion Date was June 11, 2006.  (RUSF, ¶ 21.)  Allowing another one year extension due to Chevron's alleged hindrance would extend the Completion Date again to June 11, 2007.  However, even with the extension due to Chevron's alleged hindrance, Sheikhpour still misses the extended Completion Date.

Finally, neither Chevron nor Sheikhpour has cited any factually similar cases to support an argument for or against Sheikhpour's claim that Chevron hindered his contractual performance under the MB PSA.  Sheikhpour cites to *Taylor v. Sapritch*, 38 Cal. App. 2d 478, 101 P. 2d 539 (1940) in support of his hindrance argument.  In that case, a California appellate court found that a party could not "recover on account of a breach of [an] escrow for the reason

---

[1] Chevron objected to the admission of this declaration testimony because Chevron claims it contains inadmissible hearsay under Federal Rule of Evidence 802.  However, the Court overrules Chevron's hearsay objections because Sheikhpour's declaration testimony only contains statements that are not hearsay.  The statements allegedly made by Chevron's representatives are party admissions and are not hearsay.  *See* Fed. R. Evid. 801(d)(2).  The statements made by Mr. Geiringer are not submitted to prove the truth of the matters asserted in his statements.  Instead, they are admissible as proof of the motivation and state of mind of Chevron's representatives.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

that the [party] prevented performance" of the other party under the contract. *Id.* at 481.  The party at fault refused to deposit a trust deed into escrow, thereby preventing the other party from performing its obligations.  *Id.*  Here, unlike in *Taylor*, it is not clear that Sheikhpour was completely prevented from performing his obligations merely because he claims that Chevron refused to work with one of his architects.

After consideration of the parties' evidence and arguments, the Court finds that Chevron is entitled to summary judgment on its breach of contract claim on the MB Station contracts.  Chevron has proven that Sheikhpour failed to complete required improvements by an extended Completion Date, and Sheikhpour has no viable excuse for his failure to perform.  However, this finding does not also require a finding that Chevron has a contractual right to repurchase the MB Station.  As discussed later, the PMPA affects Chevron's alleged repurchase right.

       b.     SP Station Contracts

As with the MB Station, Chevron argues that the Court should summarily find that Sheikhpour has breached the parties' agreements regarding the SP Station.  Chevron claims that Sheikhpour breached his obligation to construct improvements specified in the SP PSA by the extended Completion Date.  The SP PSA required Sheikhpour to "complete construction of the improvements" "on or before June 30, 2004 (the 'Completion Date')."  (SP PSA, p. 24.)  However, on November 15, 2005, Chevron extended the Completion Date to June 30, 2006.  (RSUF, ¶ 28.)

Here, as with the MB Station, Sheikhpour does not dispute that he did not complete the required improvements for the SP Station by June 30, 2006.  In fact, Sheikhpour admits that he has not completed the required improvements as of the filing date for his opposition to Chevron's summary judgment motion, on July 18, 2008.  Thus, without some excuse for his failure to perform, Sheikhpour is in violation of his obligation to complete the improvements by the extended Completion Date.

The SP Grant Deed also contain a provision that Sheikhpour appears to have violated.  As with the SP PSA, the SP Grant Deed required Sheikhpour to "complete construction of ... improvements ... on or before June 30, 2004 (the 'Completion Date') ..."  (SP Grant Deed, p. 81.)  Thus, the SP Grant Deed placed the same deadline on Sheikhpour as the SP PSA, and because Sheikhpour missed the deadline under the SP PSA, he also missed the deadline under the SP Grant Deed.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|----------|------------------------|------|--------------|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

However, despite Sheikhpour's apparent violation of contractual terms of the SP PSA and the SP Grant Deed, Sheikhpour argues that he is excused from missing the extended Completion Date for the SP Station improvements for the same reasons he was excused for missing the MB Station Completion Date.  First, Sheikhpour argues that contingencies beyond his reasonable control arose to prevent him from completing the improvements, and under the express terms of the SP PSA and the SP Grant Deed, Chevron was required to grant him extensions on the Completion Date.  Second, Sheikhpour argues that the SP PSA expressly required him to submit to Chevron plans for the improvement projects before close of escrow, a task that he did not complete.  Sheikhpour claims that performance of this condition was required before Sheikhpour's obligation to meet the Completion Date could arise and before Chevron's repurchase right could arise.  Thus, Sheikhpour argues that Chevron's waiver of the requirement that he submit plans before close of escrow amounts to a waiver of Chevron's claimed repurchase right upon Sheikhpour's failure to meet the Completion Date.  Third, Sheikhpour argues that, during and after the SP Station property sale, Chevron withheld material information from Sheikhpour, that Chevron's employees caused him to use a contractor resulting in Sheikhpour's monetary losses, and that Chevron created numerous issues that delayed Sheikhpour's construction.  Thus, Sheikhpour argues that Chevron prevented and hindered his performance under the parties' agreements, and this excuses his failure to meet the extended Completion Date under Cal. Civ. Code § 1511(1).  The Court now addresses Sheikhpour's arguments to excuse his failure to meet the extended Completion Date.

        i.       Is Sheikhpour Excused Because Chevron Was Required to Grant Further Extensions on the Completion Date?

Unlike Sheikhpour's deadline extension argument regarding the MB Station, Sheikhpour's argument that Chevron was obligated to provide further extensions of the Completion Date for the SP Station has merit.  Section 8(b) of the SP PSA provides that "[t]he Completion Date shall be extended to reflect any time period during which Buyer is prevented from completing construction of Buyer's Work due to acts of God, labor dispute, strikes, inability to obtain required materials and supplies or other contingencies beyond the reasonable control of Buyer."  (SP PSA, p. 21.)[2]  Like the MB PSA, the SP PSA provides that Chevron is required to grant Sheikhpour extensions on the Completion Date for contingencies beyond his reasonable control.  However, unlike the MB PSA, the SP PSA provides no maximum extension period, and thus extensions for the Completion Date could be granted indefinitely under the

---

[2] The SP Grant Deed contains a virtually identical clause.  (SP Grant Deed, p. 81.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

terms of the SP PSA.

Here, Sheikhpour has raised a triable issue of fact regarding whether contingencies arose beyond his reasonable control that would have obligated Chevron to provide extensions on the Completion Date for the SP Station. Sheikhpour has presented evidence that he diligently attempted to complete the SP Station improvements and continues to pursue his application with the City of South Pasadena for permission to construct the improvements to the SP Station. He has also presented evidence that the City of South Pasadena and its residents opposed the construction project at the SP Station and unreasonably hindered the process for Sheikhpour to obtain approval for the construction. Sheikhpour has further submitted evidence that suggests that several of Chevron's employees consider city delays during the permitting process for a construction project to be a contingency beyond Sheikhpour's reasonable control. (Pearre Depo., 70:15-73:2.) The evidence of city opposition and delays during the permitting process creates a triable issue of fact regarding whether contingencies arose that required Chevron to extend the Completion Date.

Thus, Sheikhpour has presented a triable issue of fact regarding whether he is excused for missing the Completion Date for the SP Station. To limit issues at trial, the Court will next address Sheikhpour's waiver argument regarding the SP Station.

        ii.    Did Chevron Waive the Requirement for Sheikhpour to Meet the Completion Date and Waive Chevron's Repurchase Right?

As with the MB Station, Sheikhpour argues that Chevron waived the requirement for Sheikhpour to meet the Completion Deadline and also waived Chevron's repurchase right under the SP PSA for the SP Station. Section 8(b) of the SP PSA states:

(b)    Buyer shall complete construction of the improvements listed in Exhibit C hereto ("Buyer's Work") at the Property on or before June 30, 2004 (the "Completion Date"). The Completion Date shall be extended to reflect any time period during which Buyer is prevented from completing construction of Buyer's Work due to acts of God, labor dispute, strikes, inability to obtain required materials and supplies or other contingencies beyond the reasonable control of Buyer. Prior to the Closing Date, Buyer shall provide Seller with Buyer's plans and specifications for Buyer's Work ("Plans"). The obligations of both Seller and Buyer hereunder shall be contingent upon the approval by Seller of such Plans, which approval

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

Seller may in its sole discretion arbitrarily withhold.

(SP PSA, p. 21.)  Sheikhpour emphasizes that this contractual provision required that "[p]rior to the Closing Date, [Sheikhpour] shall provide [Chevron] with [Sheikhpour's] plans and specifications for [Sheikhpour's] Work ('Plans').  The obligations of both [Chevron] and [Sheikhpour] hereunder shall be contingent upon the approval by [Chevron] of such Plans ...."  Sheikhpour argues that he never submitted Plans to Chevron prior to the Closing Date and that all his obligations under the SP PSA were expressly contingent upon Chevron's approval of these Plans.  Sheikhpour also notes that Section 8(c) of the SP PSA also states:

> If [Sheikhpour] has not completed [Sheikhpour's] Work in accordance with the Plans on or before the Completion Date, [Chevron] shall have the right to repurchase the Property ...

(SP PSA, p. 21.)  Based on this provision of the SP PSA, Sheikhpour argues that Chevron's repurchase right is contingent on Sheikhpour's failure to complete his work *in accordance with the Plans*, and because Chevron did not require Plans to be created prior to close of escrow, Chevron's repurchase right cannot arise.

However, the Court finds Sheikhpour's waiver arguments for the SP Station unconvincing for the same reasons that Sheikhpour's waiver arguments regarding the MB Station failed.  First, Sheikhpour has cited no case law supporting his waiver claims.  Second, the SP PSA's Section 17 expressly discusses waivers and states that "[n]o amendment hereof, or any waiver of any provision hereof, shall be binding on the parties unless in writing and signed by authorized representatives of both parties hereto."  (SP PSA, p. 25.)  Thus, under this provision, Chevron's alleged waiver of the requirement that Sheikhpour submit Plans before close of escrow does not affect the parties' other obligations under the SP PSA.  Third, even with Sheikhpour's failure to provide Plans for the construction before the close of escrow, his obligations to complete construction before the Completion Date are sufficiently definite to be enforceable under the SP PSA.  The SP PSA required that Sheikhpour "complete construction of the improvements listed in Exhibit C" before the Completion Date.  Even without Plans for the construction, the SP PSA definitely required Sheikhpour to "[r]eplace existing [an] automotive service bay with New CS 2010 Convenience Store and expand existing Canopy to current HM 21 standards" and to "[i]nstall Hallmark 21 landscaping."  (SP PSA, p. 42.)  Fourth, the SP PSA provided that Chevron had very wide discretion with regard to the Plans, and the SP PSA stated that "[t]he obligations of both [Chevron] and [Sheikhpour] hereunder shall be contingent upon the approval by [Chevron] of such Plans, which approval [Chevron] may in its sole discretion

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

arbitrarily withhold." (SP PSA, p. 21.) Thus, because the SP PSA provided that Chevron could arbitrarily withhold approval of any Plans Sheikhpour might submit, this discretion should be interpreted to include discretion to not require submission of any Plans at all.

In summary, the Court finds that Sheikhpour's waiver argument regarding the SP Station fails as it did for the MB Station. The Court finds that it is unnecessary to address Sheikhpour's hindrance argument because the Court's finding regarding a potentially required extension of the Completion Date requires the Court to DENY Chevron's summary judgment motion for breach of contract and specific performance on the SP Station contracts.

B.     Specific Performance of Chevron's Claimed Contractual Repurchase Rights and Effects of the PMPA

Finally, the parties dispute the effect of the PMPA on the parties' contracts. "The PMPA was designed to offer additional protection to petroleum products franchisees because it was felt that the large oil company franchisors had excessive bargaining power and that 'remedying the disparity in bargaining power between franchisors and franchisees' provided a need for the legislation." *Unocal Corp. v. Kaabipour*, 177 F.3d 755, 762 (9th Cir. 1999) (citation omitted). The overriding purpose of the PMPA (15 U.S.C. §§ 2801 et seq.) is to protect the franchisee's reasonable expectation of continuing the franchise relationship. *Id.* (citation omitted). To that end, "the terms of the PMPA are to be liberally construed to protect the franchisees." *Id.* at 765 (citation omitted).

1.     Whether the Parties' Contracts Create a Franchise Relationship Governed by the PMPA

Chevron does not contest that the parties' contracts create a franchise relationship that is governed by the PMPA. Indeed, arguing this point would be futile. 15 U.S.C. § 2801(1) defines a "franchise" and states:

(A)     The term "franchise" means any contract -

...
(ii)     between a refiner and a retailer,
...
(iv)     between an distributor and a retailer,

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use. ...

15 U.S.C. § 2801(1).  The SP Dealer Agreement and the MB Dealer Agreement are both contracts that fall within the scope of this definition.  Also, both the MB PSA and the SP PSA contain a Section 8(a) clause that states:

> The obligations of both Buyer and Seller hereunder shall be conditioned upon Buyer entering into a New Dealer Supply Contract and related agreements ... with Seller ... for the supply by Seller to Buyer of Chevron branded gasolines for resale at the Property.  All of Buyer's obligations under this Agreement shall also be deemed to be covenants of the [] Dealer Agreements, and any breach by Buyer of any such obligations shall also be a breach of the [] Dealer Agreements.

(SP PSA, p. 21; MB PSA, p. 100.)  Thus, under the definition provided by the PMPA, Sheikhpour and Chevron have franchise relationships for the MB Station and the SP Station through their contracts.

### 2.        Whether Chevron Can Terminate the Franchise Relationship

Presently, Chevron argues that, under the PMPA and as a matter of law, it was entitled to terminate the franchise relationships at the two stations, and in opposition,  Sheikhpour also argues that, as a matter of law, termination of the franchise relationships was improper.  The PMPA governs the issue of what constitutes a proper reason for termination of a franchise relationship, and the statute states:

> ... the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:
>
> (A)        A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship ...
>
> (B)        A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise ...
>
> (C)        The occurrence of an event which is relevant to the franchise relationship and as a

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect ...

15 U.S.C. § 2802(b)(2). Here, Chevron argues that it is entitled to terminate the parties' franchise relationships under both 15 U.S.C. §§ 2802(b)(2)(A) & (C) because Sheikhpour violated the terms of the franchises by failing to satisfy the PSAs' requirements for completion of improvements by the Completion Dates. However, Sheikhpour argues that, even if the Court finds that he breached his obligations under the PSAs to complete construction by the Completion Dates, those contractual terms are not of "material significance to the franchise relationships" to justify termination of the franchise relationships, findings that Sheikhpour argues are required under both statutory provisions.

Considering the statutory justification for termination of the franchises under 15 U.S.C. § 2802(b)(2)(A), the Court rejects both parties' positions and finds that there are triable issues of fact on the question of whether Sheikhpour's breaches amounted to material breaches justifying termination of the franchise relationships. As an initial matter and as discussed previously, the Court found that there is triable issue of material fact regarding whether Sheikhpour's failure to meet the Completion Date was excused for the SP Station. Thus, before reaching the issue of whether Sheikhpour's alleged breaches of the parties' SP Station contracts justify termination of the franchise relationship at the SP Station, the Court must resolve the issue of whether the breach was excused. Next, even if the Court found that Sheikhpour's breaches of the parties' contracts were not excused, the issue of whether the breaches were "of material significance to the franchise relationships" to justify termination of the franchises under 15 U.S.C. § 2802(b)(2)(A) is generally a triable issue of fact.

The Ninth Circuit, in *Chevron U.S.A. Inc. v. El-Khoury*, 285 F.3d 1159 (9th Cir. 2002), has provided guidance when examining whether a termination of a franchise relationship is proper under the PMPA. In that case, Chevron brought a declaratory relief action seeking a ruling that its decision to terminate its franchise relationship with a franchisee was proper because the franchisee underpaid state sales taxes. *Id.* at 1160. The district court had ruled in favor of Chevron at summary judgment and found that the franchisee's breach of the Dealer Agreements was material to the franchise relationship as a matter of law under 15 U.S.C. § 2802(b)(2)(A) and, even if there was some question as to the materiality of the violation, the materiality was irrelevant under 15 U.S.C. § 2802(b)(2)(C). *Id.* at 1161-62. The Ninth Circuit reversed the district court and found that, in the *El-Khoury case*, the district court was also required to examine the materiality of the franchisee's breach under 15 U.S.C. § 2802(b)(2)(C).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

*Id.* at 1162-64.  The Ninth Circuit reasoned that, although 15 U.S.C. § 2802(b)(2)(C) itself does not contain a materiality clause, the franchisor argued that the franchisee's breach was a "failure" to comply with state laws and the statute's definition of "failure" excluded violations that are only technical or that are unimportant to the franchise relationship.  *Id.* at 1162-64.  Thus, the Ninth Circuit remanded the case to the district court to determine the question of materiality for both relevant provisions of the PMPA and explained:

> Whether a violation is a "failure" that is serious enough to warrant termination can be a question of fact for trial. ... In making determinations in franchise termination cases under the PMPA, we look not only at the nature of the provision allegedly violated, but also at the nature and effect of the alleged breach.  Whether a breach ... is so fundamental that it undermines the franchise relationship may well depend on the facts of the particular case. ... We believe that all relevant factors should be explored fully at trial before any final determination is made as to whether there was a contractual violation that undermined the franchise relationship.

*Id.* at 1164 (citation omitted).  The Ninth Circuit further noted that "[n]ot every case necessarily requires a trial to settle the question of materiality.  We can imagine a case in which the materiality of a particular violation is obvious."  *Id.*

Here, even if Sheikhpour's breaches of the PSAs were unexcused, there remain triable issues of fact on the question of whether the breaches were material to the parties' franchise relationships at the two stations.  Sheikhpour has argued that his failure to meet the Completion Dates is immaterial because Chevron has suffered no damages.  Chevron has argued that it has suffered damage to its marketing image and good will and lost profits.  The parties' evidence has raised a triable issue of material fact regarding whether Sheikhpour's breaches, if unexcused, amounted to material breaches of the franchise relationships to warrant Chevron's terminations of the franchises under 15 U.S.C. § 2802(b)(2)(A).

Chevron also argues that termination of the franchise relationships is warranted under 15 U.S.C. § 2802(b)(2)(C).  That provision states that termination of a franchise relationship is justified due to "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect ..."  15 U.S.C. § 2802(b)(2)(C).  Chevron argues that Sheikhpour's failure to meet the Completion Dates were events relevant to the parties' franchise relationships at the SP Station and the MB Station, and Chevron's decision to terminate the franchise relationships was reasonable in light of

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

LINK: 35, 39, 47

| Case No. | CV 07-4451 PSG (AGRx) | Date | Aug. 6, 2008 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

Sheikhpour's failures.

However, in Chevron's papers, it recognizes that in this case the inquiry into the reasonableness of Chevron's decision to terminate the parties' franchise relationships is closely tied to the materiality of Sheikhpour's alleged breaches of the parties' contracts. (Chevron's MSJ, p. 22 line 17 - p. 23 line 2.) That is not to say, however, that the PMPA requires an inquiry into materiality whenever a franchisor terminates a franchise relationship under 15 U.S.C. § 2802(b)(2)(C), as Sheikhpour argues. The Ninth Circuit has expressly "emphasize[d] that not every ground for termination under the PMPA requires an inquiry into materiality. Rather, [the Ninth Circuit] examine[s] the text of the provision at issue to see whether Congress has required a showing of materiality to permit the termination of a franchise." *El-Khoury*, 285 F.3d at 1163.

In this case, the Court finds that there is a triable issue of material fact regarding whether Chevron's termination of the franchise relationships is reasonable under 15 U.S.C. § 2802(b)(2)(C). Here, the issues regarding materiality of Sheikhpour's alleged breaches relate closely to whether termination of the franchise relationships is reasonable. Thus, the Court DENIES Chevron's summary judgment motion for declaratory relief that termination of the franchise relationships was justified under the PMPA and that specific performance of Chevron's alleged repurchase rights is warranted. Also, the Court DENIES Sheikhpour's summary judgment motion on Chevron's claim for declaratory relief.

### V. CONCLUSION

For the foregoing reasons, the Court GRANTS-In-PART Chevron's summary judgment motion. Specifically, the Court GRANTS Chevron's summary judgment motion on Chevron's second claim for breach of contract for the MB Station, and the Court finds that Sheikhpour breached the parties' MB Station contracts.

Otherwise, the Court DENIES the parties' three summary judgment motions. More Specifically, the Court DENIES Chevron's summary judgment motion on its first, third, fourth, and fifth claims. Also, the Court DENIES Sheikhpour's two separate summary judgment motions on Chevron's five claims.

**IT IS SO ORDERED.**