**O**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**#171/173/174**

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-4451 PSG (AGRx) | Date | February 11, 2011 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers) Order Prohibiting Defendant from Removing Underground Storage Tanks**

Pending before the Court are (1) Plaintiff's Motion for an Order Prohibiting Defendant From Removing Underground Storage Tanks; and (2) Defendant's Motion for an Order Clarifying Rights to Remove Personal Property. The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers in support of these motions, the Court agrees with Plaintiff that Defendant is not entitled to remove the fuel tanks from the property and GRANTS Plaintiff's motion.

I.     Background

The motions before the Court present the question of whether Defendant Frydoun Sheikhpour ("Defendant") is entitled to remove large underground gasoline storage tanks ("tanks") located at a Manhattan Beach gas station (the "Property") owned by Plaintiff Chevron U.S.A., Inc. ("Plaintiff"). The tanks, which are valued at approximately $120,000, sit in a "tank pit area" at the Property and are covered with gravel. *Def. Notice of Mot.* 2:5-12; *see also Sheikhpour Decl* ¶¶ 5-7, Ex. 1-2. Plaintiff's position is that the tanks are fixtures that stay with the Property pursuant to an agreement between the parties under which Defendant was only authorized to remove his "personal property." Defendant argues that because the tanks are not fixtures, but instead constitute his "personal property," he is therefore entitled to remove them from the Property pursuant to the parties' agreement.

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**#171/173/174**

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-4451 PSG (AGRx) | Date | February 11, 2011 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

Given the long history of this litigation, the Court will provide only a brief factual and procedural background.[1]  On July 10, 2007, Plaintiff brought an action against Defendant to enforce an agreement under which Defendant agreed to purchase and remodel the Property.  On September 18, 2008, the parties executed a Settlement Agreement, under which Defendant was required to complete certain reconstruction obligations at the Station by October 31, 2009.  When Defendant failed to complete reconstruction by the deadline, Plaintiff obtained a Order enforcing the Settlement Agreement and ordering Defendant to convey the Station to Plaintiff.  *See* Dkt #147 (July 20, 2010).  Defendant subsequently filed a motion asking the Court to reconsider its Order; this motion, however, was denied.  *See* Dkt #163 (Sept. 24, 2010).

Plaintiff's continued efforts to secure repossession of the Property were met with additional objections from Defendant.  On December 7, 2010, Defendant requested continuing access to the Property for fourteen days to remove his "personal property" including "equipment, supplies, materials, security fence, etc."  *See Osenbaugh Decl.*, ¶ 4 Ex. D at 49; *Roberts Decl.,* ¶ 3, Ex. 2.  On December 13, 2010, the parties executed a Release and Indemnification Agreement (the "Agreement") that, among other things, provided Defendant a limited right to access the Property during a two-week period "for the sole purpose of removing [Defendant's] personal property from the [Station]."  *See Osenbaugh Decl.,* ¶ 5, Ex. E; *Roberts Decl.,* ¶ 4, Ex. 4.

Two days after executing this Agreement, Defendant announced that he intended to remove the underground fuel storage tanks from the Property pursuant to the clause in the Agreement authorizing removal of "personal property."  *See Osenbaugh Decl.,* ¶ 6; *Roberts Decl.,* ¶ 6.  In response, Plaintiff sent a letter to Defendant stating that the Agreement did not contemplate Defendant digging up the property in order to retrieve the fuel storage tanks when Plaintiff agreed to allow Defendant to remove his personal property.  *See Roberts Decl.,* Ex. 5.

Subsequently, on January 3 and 6, 2011, the parties filed cross-motions seeking an order clarifying the status of the tanks and resolving the question of whether Defendant is entitled to remove them.

II.      Discussion

---

[1] Additionally, the Court incorporates by reference the factual and procedural background set forth in its prior Orders.

**O**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**#171/173/174**

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-4451 PSG (AGRx) | Date | February 11, 2011 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

The parties' December 13, 2010 Release and Indemnification Agreement ("Agreement"), which authorized removal of Defendant's "personal property," is the only viable source of Defendant's putative right to remove the tanks. [2] Thus, the inquiry before the Court is whether the tanks qualify as Defendant's "personal property" within the meaning of the Agreement. Based on common-law principles of contract interpretation and established California "fixtures" law, as discussed below, the Court concludes that Defendant is not entitled to remove the tanks from the Property under the terms of the Agreement.

A.      Whether the Fuel Tanks Constitute Defendant's "Personal Property" Under the Agreement

Because the "mutual intention of contracting parties at the time of formation governs interpretation of the contract," Cal. Civ. Code § 1636, the Court must first evaluate whether the parties intended to include the fuel tanks within the meaning of "personal property" as used in the Agreement. As the starting point for such analysis, the Court must consider the plain language of the contract. *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir. 1999). Here, the plain language of the Agreement neither mentions the tanks expressly nor sets forth a special definition of "personal property" as would include the tanks.

Further, moving beyond the four corners of the contract, the Court finds that nothing in the parties' prior course of dealing evinces an understanding that the Agreement's reference to "personal property" encompassed the fuel tanks. If anything, the parties' prior course of dealing suggests that the parties ascribed no special meaning to the term "personal property." Although Defendant claims that in all communications prior to the signing of the Agreement requesting permission to remove personal property, he intended to include the fuel tanks within the meaning of "personal property," his prior communications never specified either that he wished to remove the fuel tanks or that he considered them personal property. Defendant stated at one point that, after the removal of his personal property, the only thing left would be "the buildings and structures actually completed." *See Roberts Decl.*, ¶ 3, Ex. 2, ¶ 3; *Osenbaugh Decl.*, ¶ 4, Ex. D,

---

[2] The parties' original Purchase and Sale Agreement ("PSA") provided Plaintiff with a right to re-purchase the property. Paragraph 8(d) of the PSA stated that such re-purchase would include "all buildings, improvements and personal property (other than resale inventory) then located on the property." *See Osenbaugh Decl.*, ¶ 2, Ex. A ¶ 8(d). When Plaintiff exercised this right, Defendant transferred his interests in any real or personal property to Plaintiff.

**O**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**#171/173/174**

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-4451 PSG (AGRx) | Date | February 11, 2011 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

¶ 3. Defendant claims that this put Plaintiff on notice that he would be removing everything from the property except for the structures.  The Court is not convinced that this phrase indicated Defendant's intent to remove the tanks, or that anything in the parties' prior course of dealing conveyed his unusual understanding of "personal property" to Plaintiff.

Where, as here, a contract does not use the disputed term in a "technical sense," and no "special meaning" was imported to it through usage, California Civil Code § 1644 instructs that the "words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning."  Cal. Civ. Code § 1644.  Accordingly, the Court must consider whether the tanks constitute "personal property" in the "ordinary and popular sense" of the phrase.

Here, the Court finds they do not.  California law technically defines personal property as "any property that is not real property." Cal. Civ. Code. § 663.  However, the term is also employed more broadly to refer to property that can be used for personal things.  *See Estate of Elkeles*, 90 Cal. App. 3d 374, 377, 153 Cal. Rptr. 377 (1979) (in the context of wills, personal property is often used in its "popular sense" to mean "items and effects of a personal nature."); *see e.g., Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 396 (2d Cir. 2005) (personal property includes computers, desks, chairs, etc.); *United States v. O'Kane*, 155 F.3d 969 (8th. Cir. 1998) (stating that a personal computer and pickup truck were personal property). It is difficult to see what personal uses Defendant could have for large, underground gas storage tanks worth $120,000, especially given Defendant's concession that removal of the tanks would take four to six hours and require the use of a crane and flatbed truck.  *Sheikhpour Decl.*, ¶ 10.

In sum, nothing in the express contractual language, the prior course of dealing between the parties, or the ordinary understanding of the term "personal property" gives rise to the conclusion that the parties understood "personal property" under the Agreement to include the underground fuel storage tanks in its definitional scope.[3]

---

[3] It further bears mention that, to the extent that the parties ascribed different meanings to the term "personal property," and neither party knew of the other's definition, there would be no true "meeting of the minds" as is required for an agreement to constitute a valid, enforceable contract.  *See Local Motion, Inc. v. Niescher,* 105 F.3d 1278, 1280 (9th Cir. 1997) (no contract on the basis of mutual mistake where the parties disagreed as to the meaning of the phrase "at the same terms" used in a renewal arrangement); s*ee generally* 5-24 Corbin on Contracts § 24.5

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**#171/173/174**

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-4451 PSG (AGRx) | Date | February 11, 2011 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

B.    Whether the Tanks Constitute Fixtures or Personal Property Under
California Law

The Court's conclusion that the tanks do not constitute Defendant's "personal property" under the Agreement is also consonant with California law regarding fixtures.  In determining whether an item is a fixture, California courts consider three factors: (1) physical annexation; (2) adaptation to use with the property; and (3) intention to annex to realty.  *Mora v. Baker Commodities, Inc.*, 210 Cal. App. 3d 771, 777, n.4, 258 Cal. Rptr. 669 (1989) (internal citation omitted).

As to the first factor, California courts consider heavy machinery physically annexed to property even where the machinery is only attached by gravity.  *See e.g., U.S. v. County of San Diego,* 53 F.3d 965, 968-69 (9th Cir. 1995) (finding that a 400 to 500 ton nuclear device was clearly annexed to the property through gravity); *Seatrain Terminals of California, Inc. v. County of Alameda,* 83 Cal. App. 3d 69, 74, 147 Cal. Rptr. 578 (1978) (finding that two large dockside cranes affixed to property only by gravity are considered constructively annexed). Thus, here, the first factor is satisfied because the fuel tanks are heavy machinery that can be annexed to property, even if attached only by gravity.  In fact, the tanks at issue here were not only annexed to the property by gravity due to their large size – they were actually buried under gravel.  *See Osenbaugh Decl.*, ¶ 6; *Sheikhpour Decl.*, ¶ 5.

Second, the Court concludes that the second factor, adaptation to use of the property, is satisfied.  Here, the fuel tanks were specifically adapted to the use of the gas station because they were inserted into the ground and covered with gravel.  *See Osenbaugh Decl.*, ¶ 6; *Sheikhpour Decl.*, ¶ 5, Ex. 2.

The third element of intent, regarded as a "crucial and overwhelming factor" in the analysis, *Seatrain Terminals of California, Inc.,* 83 Cal.App.3d at 75, is likewise met.  Given that the fuel storage tanks were highly necessary to the gas station and could serve almost no other use than gasoline storage, the Court finds it reasonable to infer that Defendant intended the tanks to become annexed to the property.  This conclusion is bolstered by Defendant's own

---

(2010).  If this is the case, and the Agreement is thereby not enforceable, then for reasons previously noted, Defendant has no grounds upon which to claim a right to remove the fuel tanks.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#171/173/174**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4451 PSG (AGRx) | Date | February 11, 2011 |
|---|---|---|---|
| Title | Chevron U.S.A., Inc. v. Frydoun Sheikhpour | | |

averments. *See Sheikhpour Decl.*, ¶ 9 (noting his intent to complete construction, which would have required annexation of the tanks).

Therefore, as all three elements are satisfied, the Court concludes that the fuel tanks at issue are considered fixtures, not personal property, under California law.

III.     Conclusion

Accordingly, based on the foregoing principles of contract interpretation and California law, the Court holds as follows:

(1) The underground gasoline storage tanks presently located at the Manhattan Beach service station at issue (the "Property") are fixtures which stay with the Property as part of the parties' repurchase agreement, rather than the "personal property" of Defendant Sheikhpour; and

(2) Sheikhpour does not own, and is therefore prohibited from removing, any and all underground storage tanks presently located at the Property.

**IT IS SO ORDERED.**